**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**JAMIE LEGLER,**

        Plaintiff,

      -vs-                                                                               Case No. 13-C-668

**EXXEL OUTDOORS, Inc.,**

        Defendant.

---

## DECISION AND ORDER

Jamie Legler is the sole owner of a design patent for a transportable and compactible sleep mat and cot cover for children, Patent No. D440,806, depicted here:



Legler alleges that Exxel Outdoors, Inc. manufactures and sells a product under the trade name "Inflatabed" which infringes the '806 patent. The Inflatabed is, essentially, a sleeping bag on top of an air mattress:



Exxel moves to dismiss for failure to state a claim. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* All well-pleaded allegations in the plaintiff's complaint are accepted as true, and all reasonable inferences are drawn in her favor. *Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013).

Legler attached a side-by-side comparison of the accused Inflatabed with the fourteen figures in the '806 patent to her amended complaint. ECF No. 12-1. The Court can, and will, consider this exhibit. *See, e.g., Anderson v. Kimberly-Clark Corp.*, --- Fed. App'x ---, 2014 WL 3361130, at *3 (Fed. Cir. July 10, 2014). The Court can also take judicial notice of the '806 patent and the prior art referenced therein. *Id.*; *Geinosky v.*

*City of Chi.*, 675 F.3d 743, 745, n.1 (7th Cir. 2012) (a Rule 12(b)(6) motion "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice").

Determining whether a design patent is infringed requires (1) construction of the patent claim, and (2) comparison of the construed claim to the accused product. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002). Regarding claim construction, the "requirement that the court construe disputed claim language, as applied to design patents, must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998). As for infringement, the Court must analyze whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)).

The formal claim of the '806 patent is the "ornamental design for a transportable and compactible sleep mat and cot cover for children, as shown and described." The drawing of the patent is depicted in fourteen figures. Half of the figures show the mat in a compacted state (as in Figure 1, above); the other half show the mat in its un-compacted state (as in Figure 8, above). The figures depict the mat from various angles. Thus, the

Court construes the claim by reference to the figures in the patent and without a detailed verbal claim construction. *Crocs*, 598 F.3d at 1302-03 ("an illustration depicts a design better than it could be by any description and a description would probably not be intelligible without the illustration. As a rule, the illustration in the drawing views is its own best description"); *Egyptian Goddess*, 543 F.3d at 679 ("the court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful").

Legler apparently concedes that the Inflatabed does not infringe her patent if the claim is construed as in the preceding paragraph. However, Legler argues that the Court must limit its construction to the "novel, ornamental features of the patented design." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). According to Legler, the handle and flaps with fasteners on the claimed design are driven purely by utility and are essential to the use and purpose of the mat because they facilitate efficient compacting and transporting of the sleep mat. Legler claims that when she created the patented design she included the handle, fasteners and flaps for the sole purpose of making the mat compactible and easy to carry, and she did not select these elements for any decorative or aesthetic purpose. Thus, Legler argues that her claim should be construed as "A Transportable and Compactable Sleep Mat of Certain Design as Shown in Figures 1-14 Without the Handle and Flaps with Fasteners."

Legler's assertion is dubious, for a variety of reasons. First, the handle, fasteners and flaps are all depicted using solid lines. "If features appearing in the figures are not

desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." *Contessa*, 282 F.3d at 1378. Second, without the handle, fasteners and flaps, Legler's design would be left with "no purely ornamental features that merit patent protection." *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 327 (S.D.N.Y. 2002).

In any event, the design of a useful article is functional "when the appearance of the claimed design is 'dictated by' the use or purpose of the article. If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *L.A. Gear, Inc. v. Thom Mcan Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). On the other hand, the elements of a design "may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent." *Id.* To receive patent protection, the design "must not be governed solely by function, *i.e.*, that this is not the only possible form of the article that could perform its function." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear* at 1123.

As the prior art confirms, there are several other ways to make a mat "compactible" and "transportable." First, Patent No. D401,736 depicts a bed roll for children in its un-compacted and compacted states. *See* ECF No. 17-2, Figures 1 and 8. The bed is simply rolled into a cylinder-like shape, held together with straps, and carried

with a handle:



Next, Patent No. 5,099,530 shows how to fold and transport an exercise pad. ECF No. 17-3, Figures 1-3, 3A.



Finally, Patent No. 5,644,807 depicts a beach towel with a carrying case. ECF No. 17-4, Figures 1 and 4.

- 6 -



Legler asserts that her design represents the best way to make such an item compact and transportable. This value judgment is disproved by framing the issue conversely: would using any of the foregoing methods in lieu of Legler's design adversely affect the utility of the patent? Clearly not. Whether the mat is rolled, folded or stuck in a bag, the item can be considered compact and transportable. Additionally, the features used by Legler could have been designed differently—e.g., substituting square fasteners for circles, making the handle shorter or wider, or lining the flaps with additional decorations. If "other designs could produce the *same or similar* functional capabilities, the design of the article is likely ornamental, not functional." *Rosco*, 304 F.3d at 1378 (emphasis added).

In construing a design patent for an athletic shoe, the Federal Circuit reasoned that simply because design elements, such as "the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by primarily functional considerations. The elements of the design may indeed serve a utilitarian

purpose, but it is the ornamental aspect that is the basis of the design patent." *L.A. Gear* at 1123; *see also Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) ("Many different configurations of those features (oval, triangular, etc.) could perform the same functions of an integrated door and frame"). By contrast, a design patent for a multi-function tool combining a conventional hammer, a stud climbing tool and a crowbar was construed to eliminate "several elements that are driven by pure utility." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010). The jaw had to be located "on the opposite end of the hammer head such that the tool can be used as a step." *Id.* The crowbar had to be "on the end of the longer handle such that it can reach into narrow spaces." *Id.* The handle had to be "the longest arm of the tool to allow for maximum leverage." *Id.* And the hammer-head had to be "flat on its end to effectively deliver force to the object being struck." *Id.* "As demonstrated by the prior art, *those are purely functional elements whose utility has been known and used in the art for well over a century*." *Id.* (emphasis added). Like the mesh on an athletic shoe, but unlike a hammerhead or its handle, the handle, fasteners and flaps on the '806 patent are ornamental, not functional.

So construed, the Court proceeds to the "ordinary observer" test. "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). This analysis "is

not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." *Contessa* at 1379; *see also Amini Innovation Corp. v. Anthony Calif., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation"). Minor differences between a claimed and accused design do not prevent a finding of infringement, *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993), but if the designs are "plainly dissimilar," they are not "'substantially the same' to the ordinary observer, as required by *Gorham*." *Egyptian Goddess* at 678.



Figure 1

Figure 1E

Figure 2

Figure 2E

Figures 1 and 2 above depict the '806 patent in its compacted state. To make the Inflatabed look compacted, Legler rolled the bed and stuffed the roll into the head pouch.

Accordingly, Figures 1E and 2E show the Inflatabed in a manipulated state to look as much as possible like the claimed design. In reality, the Inflatabed does not have an inherent mechanism for making it "compactible" or "transportable." Thus, Figures 1 and 2 show the ornamental features that Legler attempted to exclude from her claim: handle, flaps, and fasteners. The Inflatabed does not have these features. Instead, Figures 1E and 2E show a Velcro square covering the air valve of the air mattress, a feature absent from the '806 patent. Indeed, this latter feature makes the items plainly dissimilar *even if*, as Legler argues, the handle, flaps and fasteners should be excluded from her claim.



Figure 3 | Figure 3E
Figure 4 | Figure 4E
Figure 5 | Figure 5E

Figures 3, 4, and 5 continue this theme, depicting the claimed design, still compacted, from different angles. Again, the Inflatabed does not have the flaps, fasteners, and handle that highlight the features of the accused design. Also again, Figure 3E shows the Velcro square covering the air valve on the Inflatabed.



Figures 8-14 all show the '806 patent in its un-compacted state. For example, Figure 12 shows the underside of the bed. This figure shows the fasteners, the handle, and the outline of the mat surrounding the cot. Figure 12E, by contrast, does not have any of these features. Instead, the Inflatabed has a distinct pillow portion, and also a Velcro opening where the air mattress is inserted. Figure 13 shows the patented design in an un-compacted state, but from one end. Unlike Figure 13E, the '806 patent has a convex top and a concave bottom. And once again, Figure 13E shows the Velcro square covering the air valve on the Inflatabed.

The foregoing analysis demonstrates that the Inflatabed is plainly dissimilar from the '806 patent, such that an ordinary observer would not be deceived and induced to "purchase one supposing it to be the other, . . ." *Gorham*, 81 U.S. at 528. To the extent that the Inflatabed bears any resemblance to the claimed design in the '806 patent, the

two items are not "so much alike that in the market and with purchasers they would pass for the same thing—so much alike that even persons in the trade would be in danger of being deceived." *Id.* at 531. Both items are sleep mats, but to state the obvious, Legler's design is for a sleep mat that is *compactible* and *transportable*, while the Inflatabed lacks an intrinsic method for storage or transport. The distinction between the two items is manifest.

Accordingly, the Court considers this to be a case where the claimed and accused designs are "sufficiently distinct," making it "clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, . . ." *Egyptian Goddess* at 678. This conclusion is bolstered by reference to the prior art. For example, even in its manipulated, compacted state, the Inflatabed is no more similar to the claimed design than it is to the '807 patent, *supra*, depicting a beach towel in a carrying case. *Id.* at 682 ("Nothing about [the] declaration explains why an ordinary observer would regard the accused design as being closer to the claimed design than to the . . . prior art patent"). Also consider the top, side, and underside views of the "Comfort Liner" patent, No. D370,584, ECF No. 17-5, Ex. E:



In these respects, the Inflatabed actually looks *more* like the prior art '584 patent than Legler's claimed design. Thus, the "accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, . . ." *Id.* at 683.

Legler requests leave to amend, but Legler already manipulated and configured the Inflatabed in the light most favorable to her infringement claim. Further amendment

would be futile.  *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Exxel's motion to dismiss [ECF No. 15] is **GRANTED**.  The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2014.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**